UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EXXONMOBIL OIL CORPORATION, : | | CIVIL ACTION NUMBER: 09-01265 |
| Plaintiff, | : | |
| v. | : | OPINION |
| WAKILE & SONS, INC. and ADEL ABOUZID, | : | THE HON. WILLIAM J. MARTINI |
| | : | |
| Defendants. | | |

### MEMORANDUM OPINION

Plaintiff ExxonMobil Oil Corporation ("EM") submitted a Motion for Entry of default judgment against Defendants Wakile & Sons, Inc. ("Wakile") and Adel Abouzid ("Abouzid") pursuant to Federal Rule of Civil Procedure 55. (Doc. No. 14.) That motion was granted as to liability only by an opinion, (Doc. No. 16), and order, (Doc. No. 17). The Court ordered Plaintiff to make a filing in support of his damages, and a hearing was scheduled. Neither party appeared and Plaintiff relied on his filings. *See* Doc. No. 18 (statement of damages), Doc. No. 19 (certification of counsel with invoices). Having considered Plaintiff's filings, the law, and Rule 55, the Court will **GRANT** the default judgment in the amount of $113,449.56.

I.  BACKGROUND

   A.  Procedural History

On March 20, 2009, Plaintiff filed a complaint with this Court, Civil Action No. 09-01265, alleging in part that Defendants had violated the Petroleum Marketing

1

Practices Act (15 U.S.C. § 2801 et. seq.) ("PMPA"). This Court has jurisdiction to remedy violations of the PMPA under 15 U.S.C. § 2805(a). Apparently, there is also diversity jurisdiction under 28 U.S.C. § 1332.[1] Plaintiff alleges that Defendants' conduct constituted: (1) breach of contract; (2) trespass to chattels; and (3) conversion. Plaintiff seeks damages as well as injunctive relief. *See generally Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (noting that court has a duty to assure itself of subject matter and personal jurisdiction in the default judgment context).

On August 10, 2009, Plaintiff filed an Affidavit Request for Entry of Default, (Doc. No. 12-2), and provided the Court with a Text of Proposed Order for a Proposed Entry of Default Judgment, (Doc. No. 12-4). That same day, Plaintiff submitted both a Notice of Motion, (Doc. No. 14-1), and a Motion for Entry of Default Judgment, (Doc. No. 14-2). The Clerk of this Court, the Honorable William T. Walsh, entered a Default against Defendants on August 10, 2009. *See* Clerk's Entry of Default, (Doc. No. 14-Ex. A). On August 14, 2009, the Clerk noted that the Notice of Call for Dismissal was withdrawn.

**B.** **Facts**

The following factual allegations are put forward in plaintiff's complaint. (Doc. No. 1.) On November 15, 2007, Plaintiff EM entered into a Franchise Agreement with Defendant Wakile, a corporation, to operate a gasoline station for a term commencing May 1, 2008 and ending April 30, 2011. Defendant Abouzid, an individual, signed the

---

[1] Plaintiff is a foreign corporation with an office in Virginia and conducts business in New York. Defendant Wakile has a principal place of business in New Jersey and is incorporated in New Jersey. Defendant Abouzid is a resident of New Jersey.

agreement as the designated "Key Individual" on behalf of Wakile. Compl. ¶ 10. In July of 2008, Plaintiff alleges that Defendants "began a pattern of having insufficient funds in its account . . . to pay for gasoline product deliveries." *Id.* ¶ 20. Wakile allegedly missed four payments returned as NSF (insufficient funds). *Id.* ¶ 21. Plaintiff purports to have received four letters[2] addressed from the Wakile's bank stating that the NSFs were due to "bank error." *Id.* ¶ 21. Plaintiff claims that the Wakile's bank advised EM that none of letters were authentic and that Abouzid subsequently admitted to forging the four letters. *Id.* ¶¶ 22-23.

According to the Plaintiff, Wakile's franchise was unable to pay for gasoline shipments and thus did not sell any gasoline from August 26, 2008 through September 3, 2008, or any time after September 16, 2008. *Id.* ¶¶ 24-25. Plaintiff EM claims to have sent Defendant Wakile a Notice of Termination because of the alleged failure to operate for seven consecutive days. *Id.* ¶ 26. Both parties executed a Mutual Termination Agreement as to the Franchise Agreement on October 7, 2008. *Id.* ¶ 27. Plaintiff alleges that Defendants have breached this agreement. *Id.*

Plaintiff alleges that while vacating the premises of the gasoline station, Defendant Abouzid "unlawfully removed and converted to [his] own use and possession" equipment and property with an estimated replacement cost of $85,000, including: "two above-ground lifts, one air compressor, one 50 gallon water heater, one thru the wall air conditioner, one mounted bathroom mirror, eleven lighting fixtures, four tube heaters,

---

[2] The letters were dated on or about July 10, 2008; July 23, 2008; July 29, 2008 and August 18, 2008.

four glass walk-in cooler doors and an electrical junction box." *Id*. ¶¶ 28-29. Plaintiff also claims that Defendants left debris and trash in violation of the Franchise and Lease Agreements, which cost EM $4,617.32 to clean up. *Id*. ¶¶ 30-31.

On November 21, 2008, Plaintiff EM demanded full restitution in the amount of $86,666.71, exclusive of clean up costs, in order to replace the equipment and property. *Id*. ¶ 32. Abouzid's counsel responded to EM on December 1, 2008 stating that Abouzid would resolve all issues within 45 days, but not prior to that date. *Id*. ¶ 33. On January 22, 2009, Abouzid's counsel contacted EM to say that his client had been overseas but would return the following items and install them if necessary: "A. Lifts (2), B. Heaters (4), C. Mirror (1)." *Id*. ¶ 34. EM's representative responded to Abouzid's counsel on February 4, 2009. In that communication EM's representative indicated that the return of the listed items was feasible, but installation fees associated with the return of the items would be added to the amount owed by Defendants. *Id*. ¶ 35. On February 6, 2009, Abouzid's counsel responded to EM by stating that there was "no theft" and that EM should consult legal counsel. *Id*. ¶ 36. As of the filing of the Complaint on March 20, 2009, Plaintiff alleged that Defendants had not returned the property in question and have not paid the "aforesaid sums due." *Id*. ¶ 37.

II. **DISCUSSION**

　　A.　**Default Judgment Standard for Damages**

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing

*Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. Fed. R. Civ. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944).

### B.  Damages

Defendants failed to make any filing in response to Plaintiff's proof of damages. Nor did Defendants attend the scheduled hearing. Plaintiff asserts damages in the amount of $113,449.56. This amount includes monetary damages of $60,715.30 and other

damages in the amount of $52,734.26. The monetary damages include $41,218.99 in payment for equipment and services rendered necessitated by acts of Defendants, and $19,496.31 in legal fees (covered by contract). The remaining damages include $9,946.14, an amount that Plaintiff has been invoiced for but not yet paid for equipment and services rendered necessitated by acts of Defendants, and $42,788.12 for the costs associated with repairs that will not be made until Plaintiff is ready to reopen the service station. The Court has examined the proofs, Doc. No. 18 (statement on proof of damages), Doc. No. 19 (certification with invoices as exhibits), and is satisfied that they comply with the required standard, i.e., "that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency*, 109 F.3d 105 at 111.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED** in the amount of $113,449.56. A separate judgment will be filed contemporaneously with this order.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

Date: December 16, 2009